**Ana Maria BENITEZ, et al., Plaintiffs,**

v.

**Jenaro Collazo COLLAZO, Secretary of the Department of Social Services, Individually and in his official capacity; his agents, employees, or successors in office, Defendants.**

**Xiomara RAMIREZ, on behalf of her daughter Evelyn Perez Ramirez, Plaintiffs,**

v.

**Jenaro Collazo COLLAZO, Secretary of the Department of Social Services, Individually and in his official capacity; his agents, employees or successors in office, Defendants.**

Civ. Nos. 77–0662CC, 77–1170CC.

United States District Court, D. Puerto Rico.

Aug. 29, 1983.

Harry F. Swanger and John R. Bird, National Juvenile Law Center, Inc., St. Louis, Mo., and María Laura Colón, Santurce, P.R., for plaintiffs.

Melba Figueroa Padilla, Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

On May 22, 1977 plaintiffs, minors who are or have been placed in correctional prison-like institutions (secure facilities) for young offenders due to conduct which is allegedly not considered by statute to be criminal or delinquent, filed this class action pursuant to the Due Process Clause of the Constitution and the Civil Rights Act, 42 U.S.C. Sec. 1983 *et seq.*, against officers of certain agencies of the Commonwealth of Puerto Rico which are in charge of said type of allegedly prison-like facilities. The parties reached an agreement and submitted a consent decree, approved by the court on August 27, 1982, whereby defendants accepted furnishing to plaintiffs' class practically all of the relief requested in the complaint.[1] The only remaining issues in the class action have to do with determining whether plaintiffs are entitled by the United States Constitution to receive the treatment requested, for which briefs have been submitted, and the eventual monitoring of the judgment. Before us now is plaintiffs' request for an interim award of attorney's fees and defendants' opposition thereto. The opposition to said request first concentrates on the legal merits of the award. It is argued that the motion is untimely because the bill of costs was filed after the time provided by the Local Rules of the Court. They also contend that attorney's fees should not be awarded because there exist special circumstances which would render the award unjust and because plaintiffs, by not discussing or including the attorney's fees issue in the settlement agreement, waived their right to later request them. In the alternative that fees be awarded, defendants question the computation of the amount and the use of multipliers to increase it. None of the parties has requested a hearing. *See: Miles v. Sampson,* 675 F.2d 5 (1st Cir.1982). We will first address the challenge to the entitlement to the award.

■ Defendants contend that plaintiffs' Bill of Costs was filed fourteen days after the Partial Judgment was entered in violation of Rule 30 of the Local Rules of this

---

1. In general terms, defendants have agreed not to hold any members of plaintiffs' class in confinement in any of the facilities described as prison-like, to document disciplinary measures and present them to the court, not to transfer members of plaintiffs' class to the secure facilities if they abandon the approved treatment centers (open facilities), to provide a safe, human and caring environment for them and to continue treating and evaluating them for the purpose of ultimately placing them in community based programs or to reunite them with their natural parents or relatives.

Court. Our computation of this time period, in accordance with Rule 6, Fed.R.Civ.P. which indicates that the day from which the designated period of time begins to run is not included and that three days are added when notice is served by mail, does not coincide with defendants'. If the judgment was entered on August 30, 1982, the last day to file the Bill of Costs would have been Sunday, September 12, 1982, which, according to Rule 6, Fed.R.Civ.P., would extend the filing date to the next working day, that is, Monday, September 13, 1982—the day the Bill of Costs was actually filed. Defendants' opposition on grounds of timeliness is, therefore, without merit.

■ Defendants' other contention that "special circumstances" would render the award unjust also rests on frail grounds. The special circumstances alleged by defendants are that the rights claimed by plaintiffs are of "negligible constitutional priority." This assertion disregards the fact that the essence of plaintiffs' claim is a physical deprivation of their liberty by unconstitutional means. If the right to be free from unconstitutional corporal restraint and punishment is not a constitutional right of top priority then, one must ask, what is? The "antiquated, poorly-drafted, rarely-enforced juvenile curfew ordinance" cited in *Naprstek v. City of Norwich,* 433 F.Supp. 1369 (N.D.N.Y.1977) as an example of an issue that did not rise to the level of national priority or constitutional dimension to warrant an award of attorney's fees is no match to the allegations of physical deprivation of liberty and corporal abuse involved in this action, even were we to consider *Naprstek* as a controlling precedent on this matter given the great weight of authority rarely applying the "special circumstances" test. *See e.g.: Pérez v. University of Puerto Rico,* 600 F.2d 1 (1st Cir.1979). The reasons propounded by defendants as special circumstances are insufficient to deny plaintiffs' rights to an attorney's fees award.

■ In support of their waiver argument, defendants allege that at no time were costs or attorney's fees discussed during the negotiations leading to the consent decree nor does the decree mention the matter. They point to *Aho v. Clark,* 608 F.2d 365 (9th Cir.1979) where the Court held that the attorneys for the prevailing parties had waived their right to their fees by not including them in the settlement stipulation. However, the exact opposite view was taken by another Circuit in *Prandini v. National Tea Co.,* 557 F.2d 1015, 1021 (3rd Cir.1977) where it was held that it was improper to discuss the matter of attorney's fees in the context of negotiations to settle the merits of a case. And in *Mendoza v. United States,* 623 F.2d 1338, 1353 (9th Cir. 1980) the Ninth Circuit, apparently abandoning the position it had espoused in *Aho,* rejected the practice of negotiating attorney's fees simultaneously with the negotiation of the merits. Moreover, a close examination of the factual setting in *Aho* reveals important differences. In our situation, at the time the consent decree was being negotiated, the law on civil rights attorney's fees was well developed in contrast to the *Aho* setting where the settlement took place two months after the Act authorizing fees was passed. It should also be noted that in two of the cases cited with approval in the legislative history of the Civil Rights Attorney's Fees Award Act, *Incarcerated Men of Allen County v. Fair,* 507 F.2d 281 (6th Cir.1981); *Aspira of New York, Inc. v. Board of Education of the City of New York,* 65 F.R.D. 541 (S.D.N.Y.1975), plaintiffs were awarded attorney's fees even though no mention was made of it in the settlement agreements. Aside from the ethical considerations mentioned in *Prandini,* the recent Supreme Court decision of *Hensley v. Eckerhart,* (1983) —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40, may also serve to explain why, even in practical terms, civil rights settlement negotiations are usually silent on the matter of attorney's fees. In *Hensley* the Court ruled that the award of attorney's fees and its precise computation are inextricably related to the results obtained by a given plaintiff in bringing a civil rights action. Thus, in a case such as the present one where plaintiffs have obtained a consent decree which covers a great deal of

matters, the court would normally have to examine the stipulations and compare them with the pleadings to determine, not only the threshold "prevailing party" status, but to ascertain the degree of success and the reasonable attorney's time related to achieving success. According to *Hensley*, the precise extent of what is a reasonable amount of attorney's fees, should reflect the degree of success and the relationship of the success to the endeavor of the attorneys in obtaining it and should not include the time spent on matters on which the party did not succeed on and which did not contribute to the success obtained. In this sense a determination of attorney's fees made by the parties simultaneously with the negotiation and settlement of the merits is, from a practical point of view, a premature and, possibly, inordinate task. Therefore, the stage where attorney's fees are discussed would, in the usual turn of events, be left for the subsequent post-settlement period and would generally depend on some sort of court involvement in the evaluation of a party's prevailing status and the extent of its success. In fact, this Court's intervention, which calls for a higher degree of independent scrutiny and discretionary court power than the usual, regardless of the challenges presented by the parties in the adversarial shaping of the controversies, *see: Gabriele v. Southworth*, 712 F.2d 1505 at 1506–1507 (1st Cir.1983), is useful to attemper the possible lack of detachment of the attorneys in litigating the issue of their own fees. Given these considerations of an ethical as well as a practical nature, the most sensible course would be to assume that the matters related to attorney's fees will not be discussed or included in settlement agreements and negotiations and that this assumption explains the parties' silence on these matters. If we are to do justice to the liberal interpretation required by the Act, *see: Northcross v. Board*

*of Ed. of Memphis City Schools*, 611 F.2d 624, 640 (6th Cir.1979), we cannot divine from the bare silence of the consent decree and negotiations a purposeful abandonment of a right which is an indispensable ingredient of Congress' intent of enforcing Civil Rights Legislation by private attorney generals, *see: Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and which is a matter that, in the normal course of events, is not discussed during the negotiation stage. Absent additional evidence in support of the alleged waiver, the Court cannot conclude that plaintiffs' entitlement to an award of attorney's fees was waived. To hold otherwise would only serve to stimulate the undesirable practice of injecting the discussion of attorney's fees into the negotiation and settlement of the substantive rights of prevailing civil rights litigants and to pit the conflicting attorney's interest in the monetary award of fees against their clients' interest in substantive relief, which in many civil rights cases does not entail any monetary award from which attorneys may subtract a contingency fee. In short, defendants' objections to plaintiffs' entitlement as prevailing parties to an interim award of attorney's fees for the success secured so far in this litigation are without merit. We hold that plaintiffs are prevailing parties and as such are entitled to an interim award of attorney's fees,[2] the exact amount of which will be now discussed.

The amount sought by plaintiffs' attorneys includes the work of three attorneys, a number of assistant attorneys and law clerks, out-of-pocket expenses such as travel, telephone, lodging, etc., and fees and costs for experts and depositions. This amount, after being increased by a special multiplier factor, adds up to the sum claimed of $476,478.22. Attorneys Swanger, Colón and Bird each filed affidavits

2. That plaintiffs are prevailing parties has not been seriously disputed given the success obtained by plaintiffs' class through the consent decree. *See: Maher v. Gagne*, 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980). Defendants admit that plaintiffs have obtained nearly all of the relief sought at page 8 of their Post Consent Decree Brief. The fact that the litigation has not entirely concluded is no obstacle to an award of the fees for the time already spent to obtain the partial success of their claim. *See: Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978).

detailing the time spent by them on the case. Affidavits of other attorneys attesting to the reasonableness of the rates charged and to the quality of plaintiffs' legal representation were also submitted. Defendants presented a detailed opposition to the items claimed and to the rates charged. In the case of Harry Swanger, Esq., defendants allege that the rate of $125.00 per hour charged by him is excessive and that he did not adjust his professional rates to the type of work performed. They point out that out-of-court time is not distinguished in terms of rates from in-court time and that clerical work such as preparing tour itineraries are billed as professional rates. They challenge the billing of travel time, improperly described items and the use of a 150% multiplier factor for a case which they consider did not present any difficult or novel questions, had a very low risk of litigation, concerned an area of law that was well settled, required no extensive nor exceptional research, had no time limitations, did not preclude the attorneys from other litigations and ended in a settlement. The challenges to attorney Colón's affidavits are similar to those raised against that of Mr. Swanger. Mr. Bird's affidavits are questioned on similar grounds and because of alleged duplication of efforts, unreasonable expenditure of time due to inexperience and improper rates charged for his work as a law clerk. Defendants suggest that a reducer, instead of a multiplier, should be used to adjust the reported hours to reflect the possibility of duplicated or excessive time and costs given María Laura Colón's presence in Puerto Rico as local counsel. Defendants also challenge the amount of costs requested as being unreasonable and unwarranted. In particular, they object to: the reimbursement of expenses related to travel, meals and accommodations; an estimated telephone charge for $900; the constant use of expensive special postage services; cumulative photographic evidence; double billing for the same items; use of attorneys as incurred cost without these attorneys submitting the required affidavits; use of law clerks at $25 an hour; lack of detail in describing expenses and unreasonable travel expenditures by the Missouri attorneys given the presence of local counsel.

In determining the reasonable amount of attorney's fees to which attorneys for a prevailing party are entitled under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. Sec. 1988, we are guided by the principles discussed in *Furtado v. Bishop,* 635 F.2d 915 (1st Cir. 1980). Attorneys requesting their fees under the Act should also take heed of the advice given recently by the Supreme Court in *Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1940, in the sense that attorneys should exercise "billing judgment" upon presenting their claim of fees and costs in the same manner they use such judgment when presenting bills to their clients. The initial step in the computation is to arrive at a lodestar figure which should reflect the amount of hours that the court determines were reasonably expended to obtain the results which established a party's prevailing status multiplied by the rate the court determines to be appropriate *id.* and *Hensley v. Eckerhart,* be appropriate. *Furtado* at 920 and *Hensley* —— U.S. at —— – ——, 103 S.Ct. at 1940–42. This figure is then adjusted to reflect the factors that were not present in the original computation. *Idem.* There are a number of factors that a court must consider to determine the central criteria of "reasonableness," *see: Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1188–92 (11th Cir.1983) of the amount and rates claimed. A losing party should not be charged with litigation costs arising from excessive, unnecessary or duplicative time indulged in by attorneys as a result of their lack of an organized subdivision of labor or, simply, inexperience. *Furtado,* 635 F.2d at 920; *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980); *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir. 1977) and *Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1940. Our Circuit has ruled that absent a detailed description of how the work was divided among attorneys, the courts should adjust the amounts to reflect the possibility of duplication. *See:*

*Furtado,* 635 F.2d at 922. These adjustments are often made by percentage reductions and not by a time consuming item-by-item examination *id.* and *Copeland v. Marshall,* 641 F.2d at 891–92, 903; *Northcross v. Board of Ed. of Memphis City Schools,* 611 F.2d 624, 636–37 (6th Cir.1979) *cert. denied* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862. Although in the instant litigation the attorneys from Missouri may well have contributed with their expertise on juvenile law to plaintiffs' victory, we believe there was much overlapping of labor between the two attorneys from Missouri and the three attorneys from Puerto Rico which is not entirely justified. The constant traveling to and from Missouri/Puerto Rico which contributed enormously to the cost of this litigation could have been reduced if counsel for plaintiffs had coordinated their efforts in a more organized manner by delegating the responsibility for the important aspects of the case only on one attorney from the juvenile law center in Missouri and/or the attorney in Puerto Rico (Colón) who is also an expert on juvenile law. Without an explanation of how the work was divided among the five attorneys that dealt with the case (John Bird, Harry Swanger, María Laura Colón, Inés Stoll and Roberto Fernández), we seriously question the reasonableness of awarding the amounts requested by these attorneys without adjusting the excessive and unnecessary expenses and fees requested. We, therefore, reduce the total number of hours and expenses claimed by one third to reflect the possibility of defendants being unduly charged for unreasonable duplication or unnecessary and excessive time and expenses.

■ Courts should also make the necessary adjustments to the rates charged to reflect the type of work performed and the type of lawyer who performs it. *Miles v. Sampson,* 675 F.2d 5, 9 (1st Cir.1982); *Furtado,* 635 F.2d 920; *Northcross,* 611 F.2d at 637. The affidavits presented by counsel reflect a number of items such as preparing trip itineraries, assembling exhibits and trial materials and an abstruse reference to "trial logistics" which we deem to refer to transportation and preparation of trial materials, that could have been performed by clerical assistants and should definitely not be billed as professional lawyer rates. We, therefore, adjust these items to be billed as clerical work at five dollars per hour. Plaintiffs' attorneys also request compensation for a considerable amount of time spent on their Missouri-Puerto Rico trips. This time is to be excluded for the Court has no way of ascertaining whether no other work billed in other items was performed during travel time. *See: Furtado,* 635 F.2d at 922.

■ The party moving for attorney's fees should present an adequate description of the items of work for which compensation is requested and submit the necessary evidence *Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1938; *King,* 560 F.2d at 1027. Although identification of items should not turn into a tiring description of minutiae, the attorneys must present a full and specific accounting and identify the general subject matter of their time expenditures. *Idem.* Improperly documented or unspecific requests may be excluded. *Idem.* In the present case there are various reported hours under the description of "trip wrap-up" and estimated telephone time which the court has excluded. For the same reasons, the court excludes certain items charged as costs which have been inadequately presented (the fees and expenses for other attorneys that did not present their affidavits as required by *King v. Greenblatt,* undetailed photographic or photocopying costs and unspecified and estimated special postage rates and telephone costs). There is also apparently an error in that certain costs (depositions and expert fees) are being charged twice which we now correct. The court finds that the rates charged by the attorneys reflect their degree of skill, expertise and the complexity of the issues they had to face in this litigation. The fact that the case ended in a settlement does not eclipse the fact that it took the defendants almost five years to decide that plaintiffs were entitled to the concessions granted by the decree. Therefore, these rates will be accepted, except for

the rates charged by law clerks and student interns which the court finds excessive at $25 per hour and have reduced to the standard average in the community of $5.00 per hour. The small amount of time engaged in court appearances renders it unnecessary to distinguish between slight variations in out-of-court/in-court rates. The other objections raised by defendants as to the time charged for the attorney's fees request, an item related to monitoring and items referred to as unproductive time are without merit. The time spent on the request for attorney's fees itself is compensable. *See: Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir. 1978). The item related to monitoring is reasonable in light of the need to explore the practicability and legal possibility of a subsequent monitoring of the settlement agreement they were discussing in order to evaluate the desirability of the settlement itself. The unproductive time mentioned in the affidavits refers to expenditure of time that plaintiffs' attorneys had to incur in due to defendants' failure to appear at depositions and the like and not to unproductivity as discussed in *Hensley v. Eckerhart.* Aside from the items we have discussed, the other general challenges to the propriety of certain expenses are also without merit since our Circuit has recently recognized that travel and other out-of-pocket expenses may be reimbursed under Section 1988 if they are reasonable. *Palmigiano v. Garrahy,* 707 F.2d 636 at 637 (1st Cir.1983). Although we realize that there are many items which could be considered as unreasonable, excessive or duplicative, (*i.e.:* the number of telephone calls from Missouri to Puerto Rico to arrange for accommodations in Puerto Rico when they could have been made by local counsel, the repeated use of expensive special delivery of items, the many trips made by Missouri counsel to Puerto Rico instead of relying more on the local attorneys with juvenile law expertise, etc.,) we believe the one third reduction on the subtotal of hours and expenses accounts for said possibility.

■ Accordingly, the Court arrives at the following lodestar figures that reflect its estimate of the reasonable attorney's fees incurred by plaintiffs' attorneys according to the adjustments discussed in this opinion and which are detailed and calculated in Appendix A: attorney Bird is entitled to $22,730.00, attorney Swanger to $39,295.00 and attorney Colón to $30,083.34. The amount of costs and expenses which the Court deems reasonable according to the adjustments discussed in this opinion and which are detailed in Appendix B, is $26,056.71. To the total award of attorney's fees of $92,108.34, a 20% is added to reflect the contingency factor of the litigation which is not reflected by the initial lodestar computation. Aside from this factor, there are no other factors which need to be added or reduced that have not been already incorporated to the initial analysis. *See: Miles,* 675 F.2d at 8–9 and *Hensley,* —— U.S. at —— n. 9, 103 S.Ct. at 1940 n. 9. We hold, therefore, that plaintiffs are prevailing parties and that their attorneys are entitled to an interim award of fees in the amount of $110,530.01 and an amount for costs and expenses of $26,056.71. Defendants are hereby ORDERED to deposit said sums in certified check with the Clerk of the Court within ten (10) days after notice of this Opinion and Order.

SO ORDERED.

## APPENDIX A—ATTORNEY'S FEES

### JOHN BIRD

a) Travel time excluded: Items 3 (8 hours), 5 (8 hours), 19 (7 hours), 30 (8 hours), 33 (8 hours), 62 (8 hours), 67 (14 hours), 80 (9 hours), 88 (9 hours), 90 (9 hours), 94 (9 hours), 103 (9 hours), 107 (11 hours), 120 (8 hours) Total excluded travel time: 125 hours

b) Inadequately described time excluded: Items 94–95 (3½ hours) ("trip wrap-up") total excluded: 3½ hours

c) Clerical tasks (assembling exhibits, trial materials, logistics, itineraries): Items 20 (2 hours), 21 (2 hours), 23 (1½ hours), 24 (1 hour), 34 (4 hours), 35 (2 hours), 39 (3 hours), 40 (1 hour), 41 (½ hour), 42 (1 hour), 43 (½ hour), 44 (½ hour), 45 (1 hour), 48 (3

hours), 49 (2 hours), 50 (4 hours), 51 (3 hours), 52 (4 hours), 54 (2 hours), 56 (1 hour), 57 (2 hours), 58 (2 hours), 60 (2 hours), 61 (2 hours), 73–77 (9 hours), 79 (2 hours), 80 (2 hours), 81 (3 hours)

Total adjusted clerical time: 60 hours at $5.00 per hour

d) Law clerk time adjusted: 63 hours at $5.00 per hour (excluding 15 hours travel time)

e) Totals JOHN BIRD

| Reported Time | 746.5 | |
|---|---|---|
| Excluded time | −128.5 | |
| | 618.0 | |
| | −60.0 | Adjusted hours at clerical rates |
| | 558.00 | |
| | x$60.00 | Reasonable hourly rate |
| | $33,480.00 | |
| | + 300.00 | Clerical rates |
| | + 315.00 | Law clerk work |
| | 34,095.00 | |
| | −11,365.00 | 33 ⅓% reduction |
| | $22,730.00 | Total attorney's fees for Mr. Bird |

## HARRY SWANGER

a) Travel time excluded: Items B1 (6½ hours), B2 (7 hours), B14 (9 hours), B21 (7 hours), B28 (9 hours), B30 (9 hours), B35 (8 hours), B37 (4 hours), B38 (3 hours), B40 (6 hours), B42 (7 hours), B62 (8 hours), B68 (9 hours), B71 (9 hours), B74 (9 hours), B79 (6 hours), B82 (11 hours), B83 (2 hours), B85 (6 hours), B88 (8 hours), B102 (4 hours), B104 (8 hours)

98 Total excluded travel time: 153½ hours

b) Clerical tasks excluded: Item 12 (1 hour) Total: 1 hour

c) Inadequately described time: Item 105 (20 hours) "Hours spent in phone conversations with co-counsel, court witnesses and defense counsel": Total 20 hours

d) Totals

| 645 hours | Total reported time |
|---|---|
| −173 ½ | Total excluded time |
| 472.5 | |
| −1 | Adjusted at clerical rate |
| 471.5 | |
| x$125.00 | Reasonable professional hourly rate |
| $58,937.50 | |
| + $5.00 | Clerical work |
| $58,942.50 | |
| −19,647.50 | 33 ⅓% reduction |
| $39,295.00 | Total attorney's fees for Mr. Swanger |

## MARÍA LAURA COLÓN

a) Clerical tasks: Items 31 (3 hours), 57 (12 hours), 71 (10 hours) Total: 25 hours

b) Totals

| 475 | Total reported hours |
|---|---|
| −25 | Hours adjusted clerical rates |
| 450 | |
| x$100.00 | Reasonable professional hourly rate |
| $45,000.00 | |
| + 125.00 | Clerical rate |
| $45,125.00 | |
| −15,041.66 | 33 ⅓% reduction |
| $30,083.34 | Total award of attorney's fees to María Laura Colón |

## ADJUSTMENT TO LODESTAR

| a) Total awards of attorneys | $  92,108.34 | |
|---|---|---|
| | + 18,421.67 | 20% contingency bonus |
| | $110,530.01 | Total award of attorney's fees |

## APPENDIX B—COSTS AND EXPENSES

### Depositions

$3,613.95 – amount charged
−1,371.16 – excluded (double billing)
$2,242.80 – total allowed

### Expert Schwartz' Tours and Services

$12,254.33 – amount charged
− 2,303.10 – excluded (double billing – $853.10; travel and lodging expenses of attorneys who did not file affidavits ($1,450)
$ 9,951.23 – total allowed

### Telephone Expenses

$1,825.10 – amount charged
−900.00 – excluded (improper description "estimated" phone bill)
$ 925.10 – total allowed

### Attorney's Travel and Lodging Expenses

$10,494.67 – amount charged by Bird
12,066.81 – amount charged by Swanger
2,200.00 – amount charged by Colón
$24,761.48 – total allowed

### Postage Expenses

$1,452.95 – amount charged
−675.00 – excluded (improperly described "estimated" postage)
$ 777.95 – total allowed

### Photo Supplies and Photocopies

$5,143.00 – amount charged
−5,143.00 – excluded (lack of specificity to ascertain reasonableness)

Other Attorneys, Law Clerks and Student Intern Fees

$20,885.00 – amount charged
–20,885.00 – excluded (attorneys did not submit affidavits)
+    425.00 – law student intern hours at $5.00 per hour adjusted rates
$    425.00 – total allowed

Total Costs and Adjustments

Subtotal $39,083.56
–13,027.85 – 33 ⅓% reduction
$26,056.71 – total amount of costs to be reimbursed