Ana Maria BENITEZ, on Behalf of her daughter Virginia CATALA; Carmen Marquez on behalf of her daughter Vilma Baez, Plaintiffs,

v.

Jenaro Collazo COLLAZO, Secretary of the Department of Social Services, Individually and in his official capacity; his agents, employees, or successors in office, Defendants.

Xiomara RAMIREZ, on Behalf of her daughter Evelyn Perez RAMIREZ, Plaintiffs,

v.

Jenaro Collazo COLLAZO, Secretary of the Department of Social Services, Individually and in his official capacity; his agents, employees or successors in office, Defendants.

Civ. Nos. 77–0662CC, 77–1170CC.

United States District Court,
D. Puerto Rico.

April 6, 1984.

See also, 571 F.Supp. 246.

John R. Bird and Harry F. Swanger, St. Louis, Mo., and María Laura Colón, Santurce, P.R., for plaintiffs.

Melba Figueroa-Padilla, Federal Litigation Div., Dept. of Justice, Com. of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is a class action for declaratory and injunctive relief filed on behalf of all minors who are committed to the custody of the defendant Jenaro Collazo, the present Secretary of the Department of Social Services of the Commonwealth of Puerto Rico, his employees and successors in office (the Secretary), on account of conduct not considered delinquent but proscribed as undisciplined by the Minors' Code of Puerto Rico, *P.R. Laws Ann.* Tit. 34 Secs. 2001 *et seq.* In general, the proscribed conduct consists of running away, truancy, disobedience or disrespect to parents or guardians and related discipline problems. The class was certified on April 2, 1978 as consisting of "non-delinquent juveniles who can be cared for adequately in settings less restrictive of their liberty than institutions, but who are denied such opportunity because of the failure of the defendant to develop such alternatives." [1] In essence, the consolidated actions charge that confinement of plaintiffs with juvenile delinquents in secure, prison-like institutions violated their rights under the First, Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States; Article II Sec. 5 of the Constitution of the Commonwealth of Puerto Rico; the Civil Rights Act, 42 U.S.C. § 1983 and the Minors' Code of Puerto Rico.[2] When the action was filed, plaintiffs' major concern was aimed at the Secretary's practice of holding the non-delinquent offenders in custody along with juvenile delinquents in correctional type institutions designed mainly for such delinquents.[3] Children whose confinement was the result of disciplinary or adjustment problems within their family nucleus or the community commingled with minors who had committed violent acts that would have been considered crimes if committed by adults. Plaintiffs also complained of deteriorated conditions at these correctional institutions and of lack of adequate treatment and services geared to rehabilitation. After more than three years of discovery and pretrial litigation, the parties submitted an Amended Stipulation Agreement which was approved and Partial Judgment issued on August 30, 1982.

The stipulation establishes that plaintiffs shall be housed in two non-secure or "open" facilities,[4] the Trujillo Alto State Home for Girls and the Guaynabo State Home for Boys (Homes), where they will be provided with "a safe, humane, caring environment ... through the utilization of the least restrictive treatment alternatives." The Secretary agreed to establish a hierarchy of intervention strategies and treatment alternatives pursuant to which the preferable approach is to allow the minor to remain at home and to be placed in open facilities such as the Trujillo Alto and Guaynabo homes when this is the only adequate resource, and then for as short a time as possible in order to effectuate the child's return home or placed in some other home-like setting. The parties stipulated that members of the class are not to be

---

1. The class comprised two subclasses: juveniles whose conduct had been determined as undisciplinary and those who were awaiting said determination.

2. A claim under the Juvenile Justice and Delinquency Prevention Act, 42 U.S.C. § 5633(a)(12), was later dismissed.

3. See the Magistrate's Report and Recommendation of March 20, 1978 regarding class certification.

4. As defined by the parties, a non-secure facility is one "not characterized by the use of physically restricting construction, hardware or procedures and which provides its residents access to the surrounding community with minimal and/or no supervision as appropriate."

housed with juvenile delinquents nor transferred as a disciplinary measure to correctional facilities or temporary detention centers for juvenile delinquents. The Secretary agreed that the Department of Social Services will provide them access to all services leading to their normal growth and development and all services required for their individual needs as well as those necessary to prevent clear harm to their physical health. The Secretary also agreed to conduct detailed social, medical, psychological and, when possible, neurological evaluations and assessments of the minors residing at the Homes for the purpose of ultimately removing them from these facilities, reuniting them with their family or obtaining permanent placements for those having no home to return to. As to plaintiffs in need of temporary out-of-home placement, defendants will use community based settings such as foster homes and for as short a period of time as possible. The defendants agreed to study the advisability of converting the homes into residential facilities for short term treatment programs (three to twelve months) for children with behavior problems, residential units for severely mentally retarded children with emotional disorders, a comprehensive day treatment center "providing highly specialized treatment, educational and vocational services" Amended Stipulation Agreement, IV, E. 4, at pp. 9–10, and "community based group homes for adolescents who had to be prepared for independent living" *id.* The stipulation encourages the Secretary to modify, if necessary, the treatment afforded plaintiffs according to the latest developments in the applicable field. On the matter of discipline, the Secretary agreed to prepare written regulations governing the minors' conduct while residing at the Homes which were to be duly explained to plaintiffs and posted at appropriate sites. Separation or isolation was expressly rejected as a form of punishment or

a technique of treatment. Finally, the parties agreed that the terms of the Amended Stipulated Agreement would be construed liberally "to promote the goals of removal of non-delinquents from secure facilities and the provision of appropriate, individualized treatment and services in the least restrictive setting and manner for all plaintiffs." *Agreement, supra,* at VI 1, p. 14.

The only matters now pending are whether plaintiffs have a constitutional right to treatment while under the Secretary's custody and whether the court should create and implement a monitoring system to ensure compliance with the Partial Judgment appoving the Amended Stipulated Agreement. The parties have submitted memoranda on these remaining issues.

■ Plaintiffs contend that they have a right under the Due Process Clause of the Constitution "to receive rehabilitative care and treatment in the least restrictive manner." They also point to Article II, Sections 5, 7, 12 and 15 and Article VI, Section 19 of the Constitution of the Commonwealth of Puerto Rico as well as to the Minors' Code of Puerto Rico as basis for their right to treatment claim. The settlement agreement clearly provides that members of plaintiffs' class shall receive individualized care and treatment geared to their rehabilitation and that defendants shall study the advisability of converting the two open facilities to highly specialized treatment, educational and vocational centers. Plaintiffs agree that an acceptable definition of treatment, such as that mentioned in *Martarella v. Kelley,* 359 F.Supp. 478, 484 (S.D.N.Y.1973),[5] was "fleshed out" in the agreement reached with defendants and that "the longstanding complained of constitutional and statutory violations of the plaintiffs' rights by defendants will be

---

**5.** "Treatment" is defined as a therapeutic living situation for a child, including his grouping with other children; the adequacy and competency of staff members dealing with him or his case; diagnosis of his emotional and psychological needs and on the basis of such diagnosis and all other information about the child that is available, and the provision of appropriate mental health, case work, educational, recreational and medical services for him.

largely eliminated if complied with." [6] Despite this, they claim that a formal judicial declaration on the constitutional or statutory basis of the right to treatment already recognized and obtained through stipulation and partial judgment is necessary. They do not argue that the stipulation leaves their treatment claim unresolved. The only reason advanced to justify the need for this declaration is to ensure an effective enforcement of the partial judgment and to facilitate any proceedings related thereto.[7] We reject this reasoning as insufficient to support the declaration sought.

In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court addressed the burgeoning issue of the constitutional right to treatment. It held that a mentally retarded individual committed involuntarily to a state institution had a liberty interest protected by the Fourteenth Amendment in conditions of reasonable care and safety and freedom from unreasonable bodily restraint. In order to protect these interests "the state is under a duty to provide respondent with such training as an appropriate professional would consider reasonable to ensure his safety and to facilitate his ability to function free from bodily restraints." *Id.* 102 S.Ct. at 2462, and "[i]t may well be unreasonable not to provide training when training could significantly reduce the need for restraints or the likelihood of violence." *Id.* In its view, this minimal training requirement complied with the constitutional standard for involuntary confinement previously set forth in *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) that "the nature and duration of confinement bear some reasonable relation to the purpose for which the individual is committed." The Court did not resolve the question whether such an individual had a constitutional right to treatment *per se,* even though treatment would not ensure safety or freedom from undue restraint, since respondent in that case sought only training related to safety and freedom from restraints. Given the uncertainty in the record, the concurring opinion agreed with the Court's decision not to address the constitutionality of a state's total failure to provide treatment to one committed for the sole purpose of receiving treatment and care but stated outright that if it were established that the individual possessed minimal self-care skills and lost them after commitment due to the state's failure to provide him a degree of training then serious attention would be given to an argument that petitioners were constitutionally required to provide that training even if respondent's safety and mobility were not imminently threatened by their failure to do so. *Id.* 102 S.Ct. at 2464–2465. Concurring Opinion of Justice Blackmun. *See also: O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 2493 n. 10, 45 L.Ed.2d 396; Garvey, Freedom and Choice in Constitutional Law, 94 Harv.L.Rev. 1756, 1787–1791 (1981). This notwithstanding, the First Circuit recently refused to recognize a per se constitutional right in a case where petitioners advanced the *quid pro quo* argument, also used by plaintiffs here, which justifies denial of full due process rights to minors in proceedings leading to their commitment in exchange of rehabilitation/treatment. The court found that under the Minor's Code of Puerto Rico there are various purposes for involuntary confinement of juveniles besides the asserted one of rehabilitation/treatment.

6. Plaintiffs' memorandum pp. 5, 6.

7. See page 6 of Plaintiff's Post Consent Decree Brief filed on May 4, 1983 where it is said that: Without a declaration by this Court regarding the source of Defendants' obligations to the Plaintiffs (namely the right to treatment in the least restrictive manner), Plaintiffs contend that any proceedings to enforce the provisions of this Court's Order which they may later be forced to bring against the Defendants will be severely hampered. Furthermore, Defendants' voluntary compliance with the provisions of the Stipulated Agreement would clearly be facilitated by this Court's declaration that the Defendants are bound by constitutional and/or statutory law to provide Plaintiffs with the care and treatment which the Stipulated Agreement details.

Turning to the facts of our case which is now at the advanced post-consent decree stage where the practices initially challenged have presumably ceased and the possibility of recurrence is curtailed by the obligations and commitments binding defendants under the settlement agreement and by the Court's contempt power, it is difficult to perceive a concrete injury. Plaintiffs pretend that we engage in the quest of a nascent constitutional right without meeting the requirement of actual injury, a core element of any constitutional inquiry. The power to adjudicate controversies must not be used to solve abstract or hypothetical questions. *See e.g.: Liberty Warehouse Co. v. Grannis*, 273 U.S. 70, 74, 47 S.Ct. 282, 283, 71 L.Ed. 541 (1927). It is long standing judicial policy not to issue rulings on constitutional questions if the particular controversy before a court can be solved on other grounds. *See e.g.: Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981); *cf.: Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) ("A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question"); and *see gen: Ashwander v. T.V.A.*, 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J. concurring). Likewise, if subsequent events, such as a settlement between the parties, render the resolution of the constitutional question unnecessary, courts will generally consider the issue moot and decline to rule on it. *See: Local No. 8–6, Oil, Chemical & Atomic Workers International Union v. Missouri*, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *cf.: Dakota County v. Glidden*, 113 U.S. 222, 225, 5 S.Ct. 428, 429, 28 L.Ed. 981 (settlement of money judgment appealed extinguished the case); *see also: Wagner v. Gilligan*, 425 F.Supp. 1320, 1323 (N.D.Ohio 1977). In *ITT Rayonier, Inc. v. United States*, 651 F.2d 343 (5th Cir.1981) a settlement in a case brought by the Environmental Protection Agency against plaintiff for violation of federal enviornmental laws mooted an action for declaratory and injunctive relief against the agency challenging its authority to list plaintiff as an environmental law violator. The court examined the exceptions to the mootness rule, generally, that the settlement or changed circumstance not dispose of all the issues in the case or that the alleged injury, although perhaps inexistent at the time of decision, may pose a real threat of future harm for the action causing it is capable of being repeated and terminated in such a short time so as to avoid the possibility of its being finally adjudicated by the courts. *Id. See also: International Union, etc. v. Dana Corp.*, 697 F.2d 718, 720–723 (6th Cir.1983).

In this case there are several factors, in addition to the existence of the settlement agreement, which advise against issuing the declaration sought. The absence of a factual framework on which to mould our analysis makes a declaration on the right to treatment issue fraught with danger of indulging in sweeping, advisory statements which will in all probability be worthless when applied to a concrete set of circumstances. Although the contours of the constitutional right to treatment are still unclear, its developing form undoubtedly reveals that a factual layout is necessary for its standards to be properly examined, *i.e.:* the determination of the treatment to be afforded and the "professional judgment" criteria. *Youngberg*, 457 U.S. at 322–323, 102 S.Ct. 2461, 2463. On the other hand, the *Youngberg-Jackson* analysis could require that we seriously consider whether plaintiffs' class was properly certified in view of the fact that its members are committed for different reasons. Each requires a different legal approach since the purpose of confinement is the cornerstone of the analysis.

Finally, the Legislature of the Commonwealth of Puerto Rico has designed an elaborate plan to deal with minors, empowering the Puerto Rico juvenile courts to evaluate their physical and psychological conditions and to provide treatment services that they deem necessary. This presents the added risk of placing this

court in direct conflict with the legitimate exercise of the Commonwealth's legislative power as well as with the functions delegated to its judicial system. Yet, even if all odds were discounted, we ask ourselves what useful purpose will be achieved by issuing the declaration sought by plaintiffs who have reached a stipulation that makes the right to treatment a reality in their lives. Stipulations entered into by parties, stamped with judicial approval, have the necessary force of law. As plaintiffs themselves have recognized, they have obtained through the consent decree an acceptable provision for present and future individualized care and treatment for members of their class, an achievement that perhaps exceeds the benefits they might have obtained through a declaration of rights. They have not shown how a constitutional ruling on the issue of treatment would facilitate enforcement of the judgment already granting them the type of relief desired. Nor have they shown that this situation falls within any of the exceptions to the rule of judicial restraint. The judgment adopting the agreement covers the right to treatment issue and ensures the treatment sought. It is a binding decree which *if violated or ignored* triggers the court's contempt power. Given this appropriate source of relief, it is useless to rule on the constitutional issues. Similarly, we see no use in having this court interpret the Constitution of the Commonwealth of Puerto Rico or its legislation on minors as alternative sources on which to make a bare declaration of such right. Plaintiffs achieved a laudable victory for their class by obtaining a consent decree granting them the right to individualized treatment in the least restrictive manner. This achievement was recognized upon awarding them a substantial amount of attorneys' fees and costs. 571 F.Supp. 246. At this stage of the proceedings the issue of treatment is neither a substantial nor a real controversy.

■ As to the need to establish a monitoring system to guarantee the proper enforcement of the consent decree, we agree that the Partial Judgment of August 30, 1982 contains a series of conditions and periodic requirements that make it necessary to supervise its enforcement. *See: Ricci v. Okin,* 537 F.Supp. 817, 824 (D.C. Mass.1982). We believe it shall benefit both parties to create a special monitoring system to supervise the application and enforcement of the Partial Judgment of August 30, 1982. Nevertheless, the system must be economically feasible and must correspond to the resources of the agency for the imposition of a complex and costly system will serve in the long run only to divert funds just to keep a bureaucratic structure going. Since cost and impact factors data are not now available, we defer ruling on plaintiffs' proposals until an evidentiary hearing is held where both parties shall present evidence relevant to the implementation of a monitoring system.

Plaintiffs' request for a declaration on the issue of the right to treatment is DENIED and the corresponding portion of the complaint for declaratory judgment and injunctive relief is hereby DISMISSED. The request for the creation of a special monitoring system to aid in the enforcement of the Partial Judgment of August 30, 1983 is GRANTED. An evidentiary hearing where both parties will introduce evidence in support of various proposals and their costs shall be held on May 8, 1984 at 8:30 AM.

Judgment shall be entered accordingly.

SO ORDERED.