608 F.2d 365
 Madeline and David AHO, and Jessie, William, Annie and Mary
Gail Preston, by their mother and next friend Jean Aho; and
Edwina, Louise and June Richards, by their mother and next
friend Margaret Richards, on behalf of themselves and all
other persons similarly situated; and Koolauloa Welfare
Rights Groups, an unincorporated non-profit association,
Plaintiffs-Appellants,
v.
Charles CLARK, Superintendent of Education, State of Hawaii;
Stanley W. Doucette, Director of School Lunch Services for
the Department of Education, State of Hawaii; Noboru
Yonamine, Darrow Aiona, George Adachi, Richard Ando, Hubert
Minn, Marion Saunders, Howard Takenaka, Ruth Tabrah, and
Hiroshi Yamashita, members of the Board of Education, State
of Hawaii, Defendants-Appellees.
Madeline and David AHO, and Jessie, William, Annie and Mary
Gail Preston, by their mother and next friend Margaret
Richards, on behalf of themselves and all other persons
similarly situated; and Koolauloa Welfare Rights Group, an
unincorporated non-profit association, Plaintiffs-Cross-Appellees,
v.
Charles CLARK, Superintendent of Education, State of Hawaii;
Stanley W. Doucette, Director of School Lunch Services for
the Department of Education, State of Hawaii; Noboru
Yonamine, Darrow Aiona, George Adachi, Richard Ando, Hubert
Minn, Marion Saunders, Howard Takenaka, Ruth Tabrah, and
Hiroshi Yamashita, members of the Board of Education, State
of Hawaii, Defendants-Cross-Appellants.
 Nos. 77-2695, 77-2732.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 14, 1979.
 
 Shelby Anne Floyd, Paul, Johnson & Alston, Honolulu, Hawaii, for plaintiffs-appellants.
 Maria L. Sousa, Deputy Atty. Gen., Honolulu, Hawaii, argued for defendants-appellees; Ronald Y. Amemiya, Atty. Gen., Honolulu, Hawaii, on the brief.
 Appeal from the United States District Court for the District of Hawaii.
 Before SNEED and HUG, Circuit Judges, and ZIRPOLI*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Appellants appeal the denial of their request for attorneys' fees in connection with litigation which resulted in a consent agreement expanding the school breakfast program in Hawaii's public school system. Appellees cross- appeal the denial of their motion to have the consent agreement set aside. We are called upon to determine whether the district court abused its discretion in denying these motions. For the reasons set forth in this opinion, we affirm with respect to both issues.
 
 I. FACTS
 
 2
 In April and May 1976, the Board of Education of Hawaii held public meetings to discuss the implementation of a state-wide school breakfast program, in accordance with Pub.L. 94-105, 42 U.S.C. § 1773(g). Shortly thereafter the Board implemented such a program. On June 1, 1976, suit was filed by several schoolchildren on behalf of themselves and others similarly situated and by the Koolauloa Welfare Rights Group (appellants) against several state public education officials (appellees). The complaint alleged that the Board's plan failed to meet federal guidelines and was in violation of the Child Nutrition Act, 42 U.S.C. § 1773, Et seq. On July 21, 1976, appellants further alleged violations of 42 U.S.C. § 1983 and of appellants' constitutional rights to substantive and procedural due process and to equal protection under the Fourteenth Amendment.
 
 
 3
 On December 29, 1976, all parties entered into a consent agreement for the purpose of "effecting an amicable settlement." Appellees agreed to conduct a breakfast program survey and, after tabulation of the results, to implement the program in schools electing to participate. The agreement expressly left undetermined the issue of whether appellees' existing program had been in violation of any federal or state law or regulation.
 
 
 4
 On April 19, 1977, four months after the consent agreement was approved by the district court, appellants filed a motion for attorneys' fees in the amount of $11,182.50, based on the number of hours spent litigating the claims and using a "multiplier" of two to reflect the novelty and complexity of the issues. Appellees countered on May 13, 1977 by moving to set aside the consent agreement. On May 27, 1977, a hearing on both issues was held in the district court. On June 1, 1977, the court denied both motions.
 
 
 5
 Appellants appealed the denial of attorneys' fees on June 30, 1977. Notice of cross-appeal was filed by appellees on July 1, 1977, appealing the denial of their motion to set aside the consent agreement.
 
 II. DENIAL OF ATTORNEYS' FEES
 
 6
 The Civil Rights Attorney's Fees Awards Act of 1976, Pub.L.No.94-559, 90 Stat. 2641, Amending 42 U.S.C. § 1988, provides that in civil rights suits, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The circuits are in disagreement with regard to the scope of discretion committed by this statute to the district court. Compare Sargeant v. Sharp, 579 F.2d 645 (1st Cir. 1978), With Zarcone v. Perry, 581 F.2d 1039 (2d Cir. 1978), Cert. denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). In our recent decision in Buxton v. Patel, 595 F.2d 1182 (9th Cir. 1979), we approved the reasoning of Zarcone v. Perry. In that case the Second Circuit ruled that in damage actions to which the Attorney's Fees Act applies, a court's discretion should be guided by factors related to the Act's purpose, such as the size of the class benefitted, the importance of the benefits achieved by the suit, the need for an attorney's fee in order to attract competent counsel to the suit, and the presence of bad faith or obdurate conduct on the part of either party. Zarcone v. Perry, 581 F.2d at 1044. Zarcone also indicated that when the plaintiff seeks relief other than damages, courts should follow the standard of Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), which held that successful civil rights plaintiffs " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " Zarcone v. Perry, 581 F.2d at 1042, 1044.
 
 
 7
 This action was brought for declaratory and injunctive relief and hence is governed by the Newman standard. We are convinced, however, that the case presents "special circumstances" which would render an attorneys' fee award unjust. Appellants' original and amended complaints requested attorneys' fees. However, the consent agreement, which the parties entered into in order to effect "an amicable settlement in this action," made no provision for such an award. It is evident that appellants, in order to realize the most important aims of the suit without incurring the expense and risk of further litigation, agreed to forego some of the benefits which they had originally sought. The consent agreement, like nearly all such settlements, involved a compromise. For us to order an award of attorneys' fees would alter the consequences of that compromise and would thus be manifestly unfair to appellees.
 
 
 8
 Moreover, it is significant that the Attorney's Fees Act did not take effect until October 19, 1976, almost four months after this suit was filed and only slightly more than two months before the consent agreement was approved by the parties. During much of the negotiations which resulted in the consent agreement, therefore, appellees could not have been liable for attorneys' fees except upon a showing of bad faith. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). To be sure, the Act may be applied retroactively, See Stanford Daily v. Zurcher, 550 F.2d 464, 466 (9th Cir. 1977), Rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), and if the parties had litigated this matter to its conclusion, we might be inclined so to apply it. But in negotiating the consent agreement, appellees may well have relied upon their understanding that the law did not authorize attorneys' fee awards in such cases. Indeed, appellees contend that they would not have agreed to the settlement if they had believed that appellants would seek attorneys' fees. In this context, to order an award of attorneys' fees would be unduly harsh.
 
 
 9
 In determining whether these special circumstances justify denial of attorneys' fees under the Act, it is appropriate to consider the statutory purpose, as reflected in the factors discussed in Zarcone v. Perry, 581 F.2d at 1044, and in our decision in Buxton v. Patel, 595 F.2d at 1185. Although the class of children who might benefit from the school breakfast program is a large one, we are not persuaded that an award of attorneys' fees was " 'essential to attract competent counsel.' " Id. at 1185 (quoting Zarcone v. Perry, 581 F.2d at 1044). Appellees were already in the process of establishing a breakfast program at the time this suit was filed. Nor can we conclude that appellants' suit was essential in order to bring the existing program within federal standards, since that determination was expressly left unresolved by the consent agreement. Furthermore, appellees did not manifest bad faith or obdurate conduct; they were apparently quite willing to expand the breakfast program. In these circumstances, the policies underlying the Act do not mandate an award of attorneys' fees.
 
 
 10
 The parties have raised the additional issue whether appellants can be deemed a "prevailing party." Appellees contend that since the suit was settled in an agreement acceptable to all parties, appellants cannot be regarded as a "prevailing party" and are thus ineligible, by the terms of the statute, for an attorneys' fee award. Appellants maintain that they have prevailed in the suit because the consent agreement substantially achieved the relief sought in the complaint. See Parker v. Matthews, 411 F.Supp. 1059 (D.D.C.1976), Aff'd sub nom. Parker v. Califano, 182 U.S.App.D.C. 322, 561 F.2d 320 (D.C.Cir.1977). In view of our conclusion that the district court's denial of appellants' motion was a proper exercise of discretion, we need not resolve this issue.
 
 III. SETTING ASIDE THE CONSENT AGREEMENT
 
 11
 Subsequent to appellants' motion seeking attorneys' fees, appellees moved to set aside the entire consent agreement on the grounds that appellants had acted in bad faith by concealing their intention to seek attorneys' fees and had materially breached the terms of the agreement. Appellees assert that they would not have entered into the consent agreement if they had known that appellants would seek attorneys' fees.
 
 
 12
 While we do not believe that the district court abused its discretion in denying the request for attorneys' fees, neither are we persuaded that appellants acted in bad faith in requesting the award. The facts do not support appellees' assertion that appellants concealed their intention to seek attorneys' fees; we may as easily suppose that appellants became aware of the new legislation, and thus decided to seek attorneys' fees, some time after the consent agreement was reached. Moreover, since appellants' request has been denied, the consent agreement has not been significantly altered.
 
 
 13
 Relief from a judgment, under Rule 60(b)(6), F.R.Civ.P., should be granted only in cases of extraordinary circumstances. See Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); United States v. Cirami, 563 F.2d 26, 32 (2d Cir. 1977). The cases cited by appellees for the proposition that Rule 60(b) should be liberally applied involved default judgments, which are more readily overturned than other judgments. This case presents no extraordinary circumstances to justify setting aside the consent agreement.
 
 
 14
 The judgment of the district court is Affirmed.
 
 
 
 *
 Honorable Alfonso Z. Zirpoli, Senior United States District Judge for the Northern District of California, sitting by designation