[No. D003633. Fourth Dist., Div. One. Mar. 31, 1987.]

STEPHEN BEST, Plaintiff and Appellant, v.
CALIFORNIA APPRENTICESHIP COUNCIL, Defendant and
Appellant;
SAN DIEGO COUNTY ELECTRICAL JOINT APPRENTICESHIP
TRAINING COMMITTEE, Real Party in Interest and Appellant.

## COUNSEL

Stanford H. Atwood, Jr., Peter Uzzi and Atwood, Hurst, Knox & Anderson for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Timothy G. Laddish and Calvin J. Abe, Deputy Attorneys General, for Defendant and Appellant.

L. William McGrath, Jr., and Ludecke, McGrath & Denton for Real Party in Interest and Appellant.

**OPINION**

**WORK, Acting P. J.**—Stephen Best appeals a judgment awarding him attorney's fees under Code of Civil Procedure[1] section 1021.5, contending the trial court erred in disallowing an award for fees incurred during administrative proceedings. We agree with his contention, reverse that portion of the judgment, and remand the case for a further calculation of attorney's fees. San Diego County Electrical Joint Apprenticeship Training Committee (JATC) and California Apprenticeship Council (CAC)[2] cross-appeal, meritlessly contending Best should not have been awarded any attorney's fees at all.

I

The facts underlying this case appear in a decision of this court, *Best* v. *California Apprenticeship Council* (1984) 161 Cal.App.3d 626 [207 Cal.Rptr. 863]. Best, a participant in the JATC program, applied to JATC for an exemption, based on religious belief, from assignment to a nuclear powerplant. JATC denied his request and disciplined him with a 60-day suspension and termination from the program. Best appealed the decision, and, after an administrative hearing, an administrator held JATC unreasonably applied its policy by ignoring Best's religious beliefs and concern for his safety. JATC appealed the administrator's decision to CAC, which reinstated JATC's decision. Best petitioned the superior court for a writ of mandate to set aside CAC's decision, which was denied. Best appealed to this court, and we reversed the trial court's decision, holding JATC had a duty to accommodate Best's religious beliefs. We directed the superior court to issue a writ vacating CAC's decision and to order CAC to adopt the decision of the administrator. (*Id*. at pp. 628-629, 636-637.)

The superior court entered judgment in accord with our decision, including an award of $17,331.50 attorney's fees against JATC and CAC under section 1021.5. The superior court disallowed fees for expenses incurred during the administrative proceedings before the administrator and CAC, citing our decision in *Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106 [212 Cal.Rptr. 485]. The court also denied an award of attorney's fees under 42 United States Code section 1988.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] For the sake of convenience, we refer to all arguments raised either by JATC and/or by CAC as made by "respondents," unless otherwise specified. Defendant CAC is the state-created agency which regulates JATC, real party in interest.

## II

Section 1021.5 states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties *in any action* which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor." (Italics added.)

In *Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at pages 115-116, we held the prevailing party-plaintiff was not entitled to an award of attorney's fees for expenses incurred during administrative proceedings, but did not decide the issue now posed. The facts in *Beach Colony II* were similar to those here: administrative proceedings were first held before the California Coastal Commission, followed by a writ of mandate petition to the superior court. (*Id.* at p. 109.) First, we reversed the trial court's award of attorney's fees for the writ of mandate litigation, on the basis that the plaintiff, a partnership formed to develop real property, had made no showing its financial burden transcended its personal financial interest in the outcome, and section 1021.5's policy of encouraging public interest lawsuits would not be promoted by awarding fees to persons having strong personal economic interests in litigating matters. (*Id.* at p. 115.)

Second, we affirmed the trial court's disallowance of attorney's fees incurred during administrative hearings before the Coastal Commission. We noted the language of section 1021.5 referring only to "in any *action . . . ,*" and the definition of "action" in *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 636 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*), as a form of judicial remedy administered by the courts of justice or by judicial officers empowered for that purpose.[3] We concluded under *Serrano IV* "an administrative agency may not award a successful petitioner attorney's fees under a private attorney general theory for prevailing in *nonjudicial* (i.e., legislative) proceedings." (*Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at p. 116.) We also noted the contrasting language in section 1028.5,[4] which unlike section 1021.5, included a provision for attorney's fees

---

[3] *Serrano IV* held that attorney's fees were available under section 1021.5 for services related to obtaining the fees for the public interest litigation. (*Id.* at p. 639.)

[4] Section 1028.5 provides for an award of reasonable litigation expenses to small businesses who prevail in civil actions brought by state regulatory agencies without substantial just-

for "expenses incurred in administrative proceedings." We concluded the "absence of any reference to administrative proceedings in section 1021.5 suggests, at least, the section was not meant to apply to *nonjudicial* aspects of an administrative proceeding." (*Ibid.*, italics added.) Finally, we stated "[a]ssuming, without conceding, that *section 1021.5 permits a court to award attorneys fees for expenses incurred during the quasi-judicial portion of administrative proceedings* from which judicial review is taken through writ procedures, Colony II is nevertheless precluded from an award of attorneys fees under the private attorney general theory because it does not show its burden was out of proportion to its individual stake." (*Ibid.*, italics added.)

Thus, our holding in *Beach Colony II* left open the possibility that section 1021.5 allows attorney's fees arising from quasi-judicial, as opposed to quasi-legislative, administrative proceedings. ■■ ■ ■ ■ ■ ■ ■ This holding is consistent with the California Supreme Court's reasoning in *Consumers Lobby Against Monopolies* v. *Public Utilities Comm.* (1979) 25 Cal.3d 891, 906-908 [160 Cal.Rptr. 124, 603 P.2d 41], which held the Public Utilities Commission (PUC) had the equitable power to award attorney's fees under the common fund doctrine[5] in quasi-judicial reparation[6] actions.

In contrast, *Consumers Lobby* also held that attorney's fees were *not* available for expenses incurred during PUC ratemaking proceedings, since these were quasi-legislative (i.e., adopting rules and fixing rates which are prospective in application) rather than quasi-judicial (i.e., looking to the past to remedy primarily private injury and adjudicate vested interests). (*Id.* at p. 909.) The court explained that in ratemaking proceedings much public participation is allowed, the commission's task is to assimilate the varying views into a composite "public interest," the result is often not a clear-cut victory for any party, and isolating the contribution of numerous interveners is likely to be impossible. (*Ibid.*)

We see no reason why the holding of *Consumers Lobby*, finding attorney's fees appropriately awarded for quasi-judicial administrative proceedings in

---

ification. Section 1028.5, subdivision (b) defines "reasonable litigation expenses" as "expenses not in excess of seven thousand five hundred dollars ($7,500) which the judge finds were reasonably incurred in opposing the agency action, including court costs, *expenses incurred in administrative proceedings,* attorney's fees, witness fees of all necessary witnesses, and such other expenses as were reasonably incurred." (Italics added.)

[5]As explained in *Consumers Lobby,* the general rule under section 1021 is that a party is not entitled to attorney's fees absent specific statutory authorization or private agreement. However, the courts recognize three equitable exceptions to the general rule, known as the common fund, substantial benefit, and private attorney general theories. (*Id.* at p. 906.)

[6]Reparation actions arise when a public utility has charged unlawful rates and must compensate aggrieved ratepayers. (*Id.* at p. 907.)

cases involving the common fund doctrine, should not apply with equal force to cases involving the private attorney general doctrine. However, we must determine whether the Legislature has evinced a contrary intent merely by enacting section 1021.5 without including the term "proceeding." Section 1021.5 codifies the private attorney general doctrine, whereas the common fund doctrine has not been so codified.[7] In the discussion in *Consumers Lobby* disallowing the award of attorney's fees for quasi-legislative proceedings, there is dicta which arguably suggests that the omission of the term "proceeding" in section 1021.5 indicates a legislative intent *not* to allow attorney's fees based on that section for any administrative proceedings. *Consumers Lobby* states: "TURN advances two additional theories under which the commission assertedly has jurisdiction to award attorney fees in quasi-legislative ratemaking proceedings. First, TURN invokes Code of Civil Procedure section 1021.5. That section, however, only authorizes 'a court' to award attorney fees 'in any action.' By no stretch of definition is the commission a 'court' when acting in this context, nor is a ratemaking proceeding an 'action' within the meaning of the statute. *We must assume, rather, that if the Legislature had intended section 1021.5 to apply to administrative agencies in any of their functions, it would have plainly said so.* Because there is no such language in the statute, we conclude that section 1021.5 does not authorize the commission to award attorney fees in ratemaking proceedings. [Fn. omitted.]" (25 Cal.3d at p. 910, italics added.)

*Wallace* v. *Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 847-848 [216 Cal.Rptr. 649], held the language in *Consumers Lobby* regarding section 1021.5 did not prohibit an award for fees incurred in all administrative proceedings. The court held a trial court could

---

[7]See the dissenting opinion in *Consumers Lobby,* which finds section 1021.5 indicates a legislative intent to codify and *limit* the equitable doctrines for attorney's fees. (25 Cal.3d at p. 917.) The dissent interprets section 1021.5 as limiting awards to "court" proceedings, and since the Legislature did not enact a similar statute to allow such awards in administrative proceedings, its express intent is not to allow them, and continued reliance on the equitable common fund theory is contrary to that intent. The dissent notes section 1021 requires specific statutory authorization or private agreement before attorney's fees may be awarded in "actions *or proceedings*" (italics added), and thus concludes if the Legislature had intended to grant administrative bodies the power to award such fees, it could readily have so provided. (*Ibid.*) Section 1021, originally enacted in 1872, states: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; *but parties to actions or proceedings* are entitled to costs and disbursements, as hereinafter provided." (Italics added.) Best argues the Legislature intended sections 1021 and 1021.5 to be read together, and thus the use of the terms "actions or proceedings" in section 1021 indicates an intent that section 1021.5, enacted in 1977, apply to administrative proceedings. We note section 1028.5, subdivision (a), refers generally to expenses in "any civil action," and then in subdivision (b) includes within the definition of such expenses those incurred in administrative proceedings. As the ensuing discussion will reveal, we do not find the mere use of the terms "action" and/or "proceeding" on its face sheds much light on the legislative intent.

award fees for services in administrative proceedings which were inextricably intertwined with the court action. Clearly, *Consumers Lobby* interprets section 1021.5 in the context of an *administrative agency's* power to award fees for quasi-*legislative* administrative proceedings *unrelated* to court litigation. *Consumers Lobby* does not address section 1021.5 in the context of a *court's* power to award fees for quasi-legislative or quasi-judicial administrative proceedings *intertwined* with court litigation. The rationale for rejecting section 1021.5 as statutory authorization for the PUC's award of fees in a ratemaking proceeding is that: "[b]y no stretch of definition is the commission a 'court' when acting in this context, nor is a ratemaking proceeding an 'action' within the meaning of the statute." (*Consumers Lobby Against Monopolies v. Public Utilities Comm., supra,* 25 Cal.3d at p. 910.)Thus, *Consumers Lobby* leaves open the possibility that section 1021.5 may apply to an administrative proceeding which is deemed an "action" within the meaning of the statute.

In *Wallace v. Consumers Cooperative of Berkeley, Inc., supra,* 170 Cal.App.3d at pages 841-842, an action was commenced in trial court and settled, contingent upon a promise to hold administrative hearings to resolve the dispute. ▮▮▮▮ *Wallace* cites *Webb v. Dyer County Bd. of Ed.* (1985) 471 U.S. 234 [85 L.Ed.2d 233, 105 S.Ct. 1923] in support of its conclusion the statutory language of section 1021.5 is not of critical significance. (*Wallace v. Consumers Cooperative of Berkeley, Inc., supra,* 170 Cal.App.3d at pp. 847-848.)[8] In *Webb,* the United States Supreme Court upheld the trial court's denial of fees for administrative proceedings before a local school board, since they were not a necessary prerequisite to the 42 United States Code section 1983 civil rights action in which the plaintiff subsequently prevailed, and since the work performed during the administrative proceedings was not both useful and of a type ordinarily necessary to advance the civil rights action. (*Webb v. Dyer County Bd. of Ed., supra,* 471 U.S. at p. 243 [85 L.Ed.2d at p. 242, 105 S.Ct. at p. 1929].) *Wallace* reasoned the clear implication of the *Webb* decision was that on a proper showing, time reasonably expended on an action may include time spent on related administrative proceedings. (*Wallace v. Consumers Cooperative of Berkeley, Inc., supra,* 170 Cal.App.3d at p. 848.) *Wallace* rejected the argument that because the federal statute authorizes fees "in any action or proceeding" (42 U.S.C. § 1988), the California statute's more narrow "in any action" terminology foreclosed fees from being awarded for administrative hearings. (*Id.* at p. 847.)

The validity of Wallace's interpretation of *Webb* was recently buttressed by the United States Supreme Court decision in *Pennsylvania v. Dela. Val-*

---

[8] Federal decisions regarding the private attorney general doctrine embodied in statutes comparable to section 1021.5 are of analogous precedential value. (*Serrano v. Unruh, supra,* 32 Cal.3d 621, 639, fn. 29.)

*ley Cit. Council* (1986) 478 U.S. 546, 557-561 [92 L.Ed.2d 439, 451-454, 106 S.Ct. 3088]. The court interpreted section 304(d) of the Clean Air Act (42 U.S.C. § 7604(d)) as not precluding an award of attorney's fees for services rendered during administrative proceedings, even though the section only used the term "actions," whereas the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988) authorized fees in "any action or proceeding." The Supreme Court found the distinction in terminology was not a sufficient indication that Congress intended 42 United States Code section 7604 to apply only to judicial, and not administrative, proceedings. The court noted, first, the legislative history used the words "action" and "proceeding" interchangeably. Second, and more importantly, the purposes behind 42 United States Code sections 7604 and 1988 were nearly identical, i.e., to insure effective enforcement of the acts through the efforts of private citizens, and thus warranted the same interpretation.

*Pennsylvania* v. *Dela. Valley Cit. Council, supra,* 478 U.S. at page 561 [92 L.Ed.2d at pages 453-454], refers to the rule in *Webb*—i.e., to award attorney's fees for optional administrative proceedings, the work must be " 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." In *Pennsylvania,* a suit was filed which was resolved through a consent decree. The administrative proceedings for which fees were awarded involved submitting comments on regulations to be promulgated under the consent decree, and working on hearings before the Environmental Protection Agency, to prevent a ruling which would have adversely affected rights under the consent decree. (*Id.* at pp. 550, 553, 558 [92 L.Ed.2d at pp. 447, 449, 452.) The court found, although the proceedings were not "judicial" in the traditional sense, they were as necessary to the attainment of adequate relief for the client as was the work in the courtroom which secured the initial consent decree, and were crucial to the vindication of the rights under the consent decree. (*Id.* at pp. 559, 561 [92 L.Ed.2d at pp. 452, 454.)

■ We hold the appropriate inquiry to determine whether attorney's fees should be awarded by a court for services provided during administrative proceedings is whether they were useful and of a type ordinarily necessary to the vindication of the public interest litigated by the private party. Such an inquiry properly focuses on effectuating the purpose of the private attorney general doctrine rather than superficially applying the face of the statute. (*Bravo* v. *Cabell* (1974) 11 Cal.3d 834, 838 [114 Cal.Rptr. 618, 523 P.2d 658].) ■ Similar to the purpose of the federal legislation discussed in *Pennsylvania,* the private attorney general doctrine embodied in California's section 1021.5: ". . . rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, with-

out some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) Whether the private enforcement of public policies is achieved through an administrative and/or a judicial proceeding is irrelevant to the need to award attorney's fees to encourage the enforcement.

■■■ Our conclusion is supported by the fact that the term "action," as defined in the Code of Civil Procedure, refers to a distinction between two classes of judicial remedies: (1) actions, which are *ordinary proceedings* derived from actions at law or suits in equity, and (2) *special proceedings,* which are established by statute and usually create new remedies unknown to the common law or equity courts.[9] (See generally, 3 Witkin, Cal. Procedure (1985) Actions, §§ 12-13, pp. 41-46; *Agricultural Labor Relations Bd.* v. *Superior Court* (1983) 149 Cal.App.3d 709, 714 [196 Cal.Rptr. 920].) Thus, the distinction between "action" and "proceeding" in the Code of Civil Procedure has nothing to do with the distinction between judicial and administrative proceedings, but rather distinguishes between two types of judicial proceedings. Indeed, the writ of mandate proceeding involved here is described as a special proceeding, not an action. (§ 1094.5; *Wenzler* v. *Municipal Court* (1965) 235 Cal.App.2d 128, 131-132 [45 Cal.Rptr. 54].) Yet, respondents do not argue, nor would it be reasonable to argue, that the court could not award attorney's fees for the mandamus proceeding. (See *In re Head* (1986) 42 Cal.3d 223, 227 [228 Cal.Rptr. 184, 721 P.2d 65].) In short, the use of the term "action" does not in all contexts refer to the technical meaning of the term as defined in the Code of Civil Procedure. (See, e.g., *Bravo* v. *Cabell, supra,* 11 Cal.3d at p. 838 [writ of mandamus special proceeding covered under statutory term "in any criminal action"]; *Vladu* v. *State of California* (1959) 175 Cal.App.2d 50, 52 [345 P.2d 302] [special proceeding to recover escheated estate covered under statutory term "any action"].)

Finally, our conclusion is supported by the reasoning of our Supreme Court in a recent case, *In re Head, supra,* 42 Cal.3d 223, which holds fees may be awarded under section 1021.5 in habeas corpus proceedings vindicating prisoners' rights. Our Supreme Court rejected the court of appeal's

---

[9] Section 20 states: "Judicial remedies are such as are administered by the courts of justice, or by judicial officers empowered for that purpose by the Constitution and statutes of this State." Section 21 states: "These remedies are divided into two classes: [¶] 1. Actions; and, [¶] 2. Special proceedings." Section 22 states: "*An action is an ordinary proceeding* in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Italics added.) Section 23 states: "Every other remedy is a special proceeding."

conclusion the fees were unavailable since habeas corpus is a special proceeding of a criminal nature and not a civil action. (*Id*. at p. 226.) The court held "the nature of the relief sought, not the label or procedural device by which the action is brought, is determinative of the right to seek fees under section 1021.5." (*Ibid*.) The court noted the claim "might have been presented in a purely civil proceeding—by petition for writ of mandate or action for declaratory relief —in which case no question would be raised as to the propriety of the award. That petitioners elected to utilize the more expeditious, simplified, and less expensive procedure of habeas corpus to vindicate their rights, should not affect the availability of a fee award. [Fn. omitted.]" (*Ibid*.) The court stated, "How the party achieves the goal of enforcing the right in question is not determinative of the right to an award of attorney fees under section 1021.5." (*Id*. at pp. 228-229.) The court concluded, "Our construction of section 1021.5 ensures that the legislative purpose will not be frustrated by a restriction of the availability of attorney fee awards where the restriction is not clearly mandated by the language of the statute." (*Id*. at p. 233.)

Similarly here, the fact the vindication of the public interest was sought beginning in an administrative rather than judicial forum,[10] should not be allowed to frustrate the legislative intent of encouraging public interest litigation.

In sum, we find the term "action" in section 1021.5 encompasses administrative proceedings which were useful and necessary to the public interest litigation. The administrative proceedings here were not "optional" in the same sense as they were in *Webb* v. *Dyer County Bd. of Ed., supra,* 471 U.S. at pages 240-244 [85 L.Ed.2d at pages 240-243, 105 S.Ct. at pages 1927-1929]. In *Webb*, the plaintiff first raised his claim in an administrative hearing before a local school board, and then brought an independent suit under 42 United States Code section 1983[11] in federal court, and sought fees for the two distinct legal avenues. Here, Best pursued an administrative remedy which ultimately culminated in proceedings in the courts as an adjunct to the administrative proceeding, and is seeking fees for that single legal course. ▆▆▆ Since the administrative proceedings here were the first step in the litigation leading to the mandamus proceeding (§ 1094.5), by their very nature they were useful and of a type ordinarily necessary to the public interest litigation.

Respondents argue the holding of *Wallace* should be limited to its facts, i.e., where administrative proceedings follow and result from a court action,

---

[10] As discussed *infra,* Best could have brought his claim directly in state or federal court under a 42 United States Code section 1983 federal civil rights action.

[11] All subsequent references to section 1983 are to the United States Code.

and not applied here where the administrative proceedings precede a mandamus action. (See *Wallace v. Consumers Cooperative of Berkeley, Inc., supra,* 170 Cal.App.3d at p. 849, fn. 5, where the court distinguished the facts before it from those in *Beach Colony II v. California Coastal Com., supra,* 166 Cal.App.3d 106.) Although *Beach Colony II* involved comparable facts as here, its holding that no fees should be awarded had nothing to do with that factual scenario, but rested on the fact the plaintiff's financial burden did not outweigh its personal financial interest. In the context of the present case, we find that whether administrative proceedings precede or follow a court action, is a distinction without a difference, since the order alone does not make the proceedings any less intertwined, useful and of a type ordinarily necessary to the court action. (Cf. *Webb v. Dyer County Bd. of Ed., supra,* 471 U.S. at pp. 250-252 [85 L.Ed.2d at pp. 247-248, 105 S.Ct. at p. 1933, conc. and dis. opn. of Brennan, J., and Blackmun, J.] [no reason to draw artificial distinction based on whether time spent preparing directly for litigation or instead in administrative proceeding that led directly to litigation]; *North Carolina Dept. of Transp. v. Crest Street* (1986) 479 U.S. 6, 14 [93 L.Ed. 2d 188, 196-197, 107 S.Ct. 336, 341] [a court may award fees for administrative proceedings *prior* to the litigation].)

■ ■■ ■■ ■ We hold Best is entitled to an award of attorney's fees for services provided during the administrative proceedings.[12]

---

[12] It is not necessary to the resolution of this case for us to decide the issue of whether a party whose public interest dispute is resolved at the administrative level, without needing to resort to a court action, can obtain attorney's fees either from the administrative agency or from a court in a separate action brought solely to obtain fees. We note the United States Supreme Court has recently interpreted 42 United States section 1988 as not allowing such a separate court action. (*North Carolina Dept. of Transp. v. Crest Street, supra,* 479 U.S. 6 discussed *infra.*) *North Carolina*'s interpretation of section 1988 may or may not apply to an award of attorney's fees under California law. Under federal law, fees based on the private attorney general doctrine are available only by statutory authorization. (*Alyeska Pipeline Co. v. Wilderness Society* (1975) 421 U.S. 240, 260-269 [44 L.Ed.2d 141, 154-160, 95 S.Ct. 1612].) In contrast, under California law, courts have the equitable power to award attorney's fees under the private attorney general doctrine, at least when constitutional rights are vindicated, even absent statutory authorization. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 47 [141 Cal.Rptr. 315, 569 P.2d 1303]; see *Woodland Hills Residents Assn., Inc. v. City Council, supra,* 23 Cal.3d 917, 929-931.)

Since our Supreme Court has held an administrative agency has the equitable power to award attorney's fees under the common fund doctrine (*Consumers Lobby Against Monopolies v. Public Utilities Comm., supra,* 25 Cal.3d at pp. 906-908), it is arguable an administrative agency has the equitable power to award attorney's fees under the private attorney general doctrine. Thus, even if California's section 1021.5 was interpreted in the same manner as the federal section 1988 (i.e., as authorizing attorney's fees only when resort to a court is necessary to vindicate the claim), an award of attorney's fees solely for an administrative action may still be available based on the equitable powers of the administrative agency which do not depend on statutory authorization.

## III

■ Best also contends the trial court should have awarded him attorney's fees for the administrative proceedings under 42 United States Code section 1988,[13] which states in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (See generally, *Filipino Accountants' Assn.* v. *State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1035 [204 Cal.Rptr. 913], which found an award of attorney's fees was appropriate under § 1988 as well as § 1021.5; see also *Green* v. *Obledo* (1984) 161 Cal.App.3d 678, 681 [207 Cal.Rptr. 830], cert. den. 474 U.S. 819 [88 L.Ed.2d 54, 106 S.Ct. 67].)[14] The trial court denied an award under section 1988 since Best "did not seek a remedy under any substantive portion of the Federal Civil Rights Act and the respondents acted in good faith."

In *Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 69 [200 Cal.Rptr. 322], we held that a petition for writ of mandate stated a cause of action under section 1983,[15] supporting a fee award under section 1988, even though the caption and the body of the petition did not specify section 1983. ■ Under California and federal law, the labeling of a pleading is not determinative, but rather the subject matter of the action is to be determined from its allegations, regardless of what they may be called. (*Id.* at pp. 69-7(, and cases there cited; accord *Green* v. *Obledo, supra,* 161 Cal.App.3d 678, 682.)

■ A section 1983 claim requires an examination of two essential elements: (1) whether the conduct was committed under color of state law, and (2) whether the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. (*Green* v. *Obledo, supra,* 161 Cal.App.3d 678, 682.)

---

[13] All subsequent references to section 1988 are to the United States Code.

[14] In *Filipino Accountants' Assn.* v. *State Bd. of Accountancy, supra,* 155 Cal.App.3d at page 1029, the court refrained from deciding whether the states could be compelled to honor a judgment exceeding the Budget Act restrictions because of federal legislation. In *Green* v. *Obledo, supra,* 161 Cal.App.3d at page 683, the court held the state's Budget Act limitations did not apply to attorney's fees awarded pursuant to section 1988. The parties here did not raise this issue, and we specifically decline to address it.

[15] Section 1983 states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. . . . "

 Here, Best's petition for writ of mandate challenged CAC's decision on the basis it had not refuted the administrator's determination that JATC could have reasonably accommodated Best's religious beliefs and that its failure to do so constituted willful discrimination. Best clearly alleged facts which state a claim of deprivation of the right to freedom of religion protected under the First Amendment of the United States Constitution, and committed under color of state law through the decisions of JATC and CAC. (See *Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d at pages 635-636.) Although our religious freedom decision in *Best* v. *California Apprenticeship Council, supra,* at pp. 633-634, was predicated on Government Code section 12940, subdivision (c), it is clear that in the absence of a provision under California law, we would have been compelled to reach the same conclusion under the First Amendment of the federal Constitution. Indeed, we analogized to a federal First Amendment decision and applied its three-prong test to evaluate whether the duty to accommodate religious beliefs had been violated so as to constitute religious discrimination. (161 Cal.App.3d at pp. 635-636.) Although the claim was decided under California's Government Code, it arose out of the same common *nucleus* of operative facts as a federal constitutional claim under section 1983, and thus warrants an award under section 1988. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at pp. 936-938, and federal cases there cited; *Filipino Accountants' Assn.* v. *State Bd. of Accountancy, supra,* 155 Cal.App.3d at p. 1035.)

Respondents cite *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 124-125 [185 Cal.Rptr. 878], in support of the argument that Best's failure to denominate section 1983 in his pleading bars an award under section 1988. As stated in *Green* v. *Obledo, supra,* 161 Cal.App.3d at page 682, *Logan* merely found the conclusory assertions in the complaint failed to state a claim under section 1983. Indeed, in *Logan* v. *Southern Cal. Rapid Transit Dist., supra,* 136 Cal.App.3d at pages 123, 126-127, the plaintiff *had* apparently denominated section 1983 in his complaint, but failed to assert facts to support the claim that he was deprived of a property right without due process.

Respondents argue even if Best did state a claim under section 1988, no award is appropriate for the *administrative* proceedings under Labor Code sections 3081 through 3085,[16] since he could have brought a section 1983 action directly to state or federal court. It is true Best would not have had to exhaust his administrative remedy, but could have chosen the independent

---

[16] Labor Code sections 3081 through 3085 provide for a complaint that an apprentice agreement has been violated, a hearing before the administrator, an appeal to CAC, judicial review in the courts on questions of law, injunctions, and an exhaustion of administrative remedies requirement.

avenue of relief under section 1983, which allows him to go straight to court. (*Webb* v. *Dyer County Bd. of Ed., supra,* 474 U.S. at pp. 240-241 [85 L.Ed.2d at pp. 240-241, 105 S.Ct. at p. 1927]; *Logan* v. *Southern Cal. Rapid Transit Dist., supra,* 136 Cal.App.3d at p. 124.) As already indicated, however, Best is not seeking fees for both an "optional" administrative remedy followed by a distinct section 1983 suit, but instead is seeking them for his section 1983 claim brought through a single legal avenue which commenced with an administrative proceeding and ended in court.

■ The rationale for the suspension of state exhaustion requirements for section 1983 claims is that the state may not impose conditions on federally created rights. (*Logan* v. *Southern Cal. Rapid Transit Dist., supra,* 136 Cal.App.3d at p. 124, and cases there cited.) Although Congress did not *require* reliance on administrative proceedings before bringing section 1983 suits, there is no indication it sought to *discourage* resort to such administrative proceedings. (See *Webb* v. *Dyer County Bd. of Ed., supra,* 471 U.S. at pp. 251-252 [85 L.Ed.2d at p. 248, 105 S.Ct. at pp. 1933-1934] (conc. and dis. opn.).) ■ Thus, there is no reason to deny a full award under section 1988 merely because Best chose a route which used administrative proceedings as the first step.

Best is not seeking a duplicative recovery of attorney's fees, but is only seeking them for one course of legal redress he has successfully followed through to its finish.[17] If Best was seeking fees for a case brought directly to court, he would without question be entitled to them for the full course of litigation. (Cf. *In re Head, supra,* 42 Cal.3d at p. 226.) To deny fees for the administrative proceedings would encourage parties to bypass administrative proceedings whenever possible, a result contrary to the interests of judicial efficiency. With the increasing multiplicity and complexity of judicial affairs, administrative avenues have been created as a matter of practical necessity (see *Fallen Leaf Protection Assn.* v. *State of California* (1975) 46 Cal.App.3d 816, 828-829 [120 Cal.Rptr. 538]) and their use should be encouraged. (Cf. *Webb* v. *Dyer County Bd. of Ed., supra,* 471 U.S. at pp. 247-252 [85 L.Ed.2d at pp. 245-249, 105 S.Ct. at pp. 1931-1934] (conc. and dis. opn.).)

Our conclusion was anticipated by dicta in *North Carolina Dept. of Transp.* v. *Crest Street, supra,* 479 U.S. 6. *North Carolina* holds that a court may not award fees under section 1988 for administrative proceedings which are not part of or followed by a lawsuit. In *North Carolina,* the dispute was resolved through the filing of an administrative complaint and a

---

[17]Apparently Best did file a section 1983 claim directly in federal court before we rendered our decision in *Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d 626.

subsequent negotiated agreement. The plaintiffs filed a court action *for the sole purpose of obtaining attorney's fees under section 1988.* In holding the plain language of the statute did not allow for an independent action solely to recover fees for a settled administrative action, the court stated: "It is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." (*Id.* at p. 14 [93 L.Ed.2d at p. 197, 107 S.Ct. at p. 341].) In dicta, however, the court noted: "*A court hearing one of the civil rights claims covered by § 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation.* See *Carey, supra* (so holding under identical language of Title VII). Moreover, even if the prior proceeding is not a 'proceeding to enforce' one of the § 1988 civil rights laws, the 'discrete portion of the work, product from the administrative proceedings' that 'was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement' can be part of the attorney's fees awarded under § 1988. *Webb, supra,* at 243, 105 S.Ct. at 1929; see also *Hensley* v. *Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)." (*Id.* at p. 15 [93 L.Ed.2d at p. 197, 107 S.Ct. at pp. 341-342], italics added.)

Thus, under the reasoning of *North Carolina,* Best is entitled to attorney's fees under section 1988 for the administrative proceedings since they were useful and of a type ordinarily necessary to advance the civil rights litigation, and it was necessary for him to resort to court action in order to obtain relief.

Finally, respondents' purported good faith *alone* is not a special circumstance justifying a denial of attorney's fees under section 1988. In *Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at page 117, this court noted that good faith may be *relevant* to denying recovery, citing *Aho* v. *Clark* (9th Cir. 1979) 608 F.2d 365, 368. In *Aho,* where the appellants had challenged the sufficiency of Hawaii's school breakfast program, the lower court's denial of attorney's fees was upheld on appeal based on several factors—i.e., the consent decree designed to be an "amicable settlement" of the action did not provide for fees; the statute authorizing the fees was not in effect during much of the settlement negotiations and the appellees may have relied on that fact when they negotiated the settlement; the consent decree expressly left unresolved the determination whether the suit was essential to bring the program within federal standards; and the appellees did not manifest bad faith or obdurate conduct but were quite willing to expand the government program challenged by the appellants. (*Aho* v. *Clark, supra,* 608 F.2d at pp. 367-368.) *Aho* found the case presented special circumstances which would render an attorney's fee award unjust, and in

these circumstances the policies underlying section 1988 did not mandate an award of fees. (*Id.* at pp. 367-368.)

The appellee's willingness to settle the case was an important factor in the court's conclusion in *Aho,* as indicated by the court's statement that if the parties had litigated the matter to its conclusion, it would have been inclined to retroactively apply the attorney's fees statute. (*Id.* at p. 367.) Thus, *Aho* does not stand for the general proposition that good faith alone warrants denying attorney's fees, but rather it is a factor which can be considered to determine if, under the circumstances of the case, an award would be *unjust.*

This interpretation of *Aho* was clarified in *Teitelbaum* v. *Sorenson* (9th Cir. 1981) 648 F.2d 1248, 1250, footnote 1, and cases there cited, where the court acknowledged *Aho*'s ruling that good faith was one factor of several that a court may consider, but concluded that good faith by itself is not a special circumstance justifying a denial of attorney's fees, noting this was the prevailing view among the federal circuit courts. (See also *Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 401-402, fn. 4 [19 L.Ed.2d 1263, 1266, 88 S.Ct.964] [attorney fees award under Title II of Civil Rights Act not limited to cases where defenses were for delay and not in good faith].) One reason *Teitelbaum* presents in support of its conclusion is that treating good faith as a special circumstance defeats the policy underlying attorney's fees awards, which are not designed to penalize defendants, but to encourage injured individuals to seek judicial relief. (*Teitelbaum* v. *Sorenson, supra,* 648 F.2d 1248 at p. 1251.) *Teitelbaum* notes that to act as an effective incentive, fee awards should be the rule rather than the exception, and denying fees where a defendant acts in good faith will defeat this aim since most defendants will be able to demonstrate at least colorable good faith. (*Ibid.*) ꞌ

The same conclusion was reached in *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 475 [201 Cal.Rptr. 424], where the court cited several federal cases recognizing attorney's fees are not intended to punish the defendant, but to permit and encourage plaintiffs to enforce their civil rights, and thus, there is no good faith exception to section 1988.

Here, even if respondents acted in good faith, the trial court erred in relying on this factor alone to deny an award under section 1988. Unlike *Aho,* this was not a case where the defendants were willing to meet the plaintiff's demands by promptly settling the case. Best had to pursue the litigation to this appellate court. The circumstances do not indicate an award of attorney's fees would be unjust.

## IV

On cross-appeal, respondents argue Best should not have been awarded attorney's fees because his case does not satisfy the requirements of section 1021.5. We find the trial court did not abuse its discretion in making the award.

The first requirement is that a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons. Since the case litigated the constitutional right to the accommodation of religious beliefs in the employment context, it conferred a benefit on the general public. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318-319 [193 Cal.Rptr. 900, 667 P.2d 704].) Indeed in *Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d at page 628, we did not dismiss the appeal even though Best had by then graduated from the apprenticeship program, because the issue of failure to accommodate a trainee's sincerely held religious belief is one which may reoccur.

The second requirement is that the necessity and financial burden of private enforcement are such as to make the award appropriate. Respondents argue private enforcement was not necessary since public enforcement was available through the Department of Fair Employment and Housing (DFEH). According to Best's petition for writ of mandate, he filed a complaint with the apprenticeship division of the Department of Industrial Relations in March 1981 and a complaint with the DFEH in April 1981. His complaints were consolidated under former Labor Code section 3096 and a hearing set and held in July 1981 before the administrator of apprenticeship. The administrator submitted his decision in October 1981 and JATC appealed. On June 10, 1982, a review hearing was held before CAC's appeals board. In October 1982, CAC rendered its decision.

Meanwhile, on June 23, 1982, Best requested DFEH to discontinue further action on his complaint, since he had elected to pursue his administrative remedies before the apprenticeship division and in court.

We do not find the trial court abused its discretion in concluding private enforcement was necessary. There is nothing to ensure DFEH could have or would have prosecuted the claim. As a practical matter, public agencies cannot be expected to take every meritorious case. One of the justifications for the private attorney general doctrine is a recognition that: "In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. These, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encour-

age their private vindication in the courts. *Although there are within the executive branch of the government offices and institutions . . . whose function it is to represent the general public in such matters and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative."* (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 44, italics added.)

Moreover, since the DFEH complaint was apparently consolidated with the apprenticeship complaint (an assertion not disputed by respondents), DFEH did not prosecute in the first instance. Once the adjudication was commenced before the administrator of apprenticeship, pursuing that route through private enforcement became necessary for the most expeditious vindication of the public interest.

The third requirement of section 1021.5, that the fees should not in the interests of justice be paid out of the recovery, is satisfied since Best received no monetary recovery.[18]

Nor did the trial court abuse its discretion in finding the financial burden of private enforcement makes the award appropriate. Best did not have a personal interest in the outcome of the case which outweighed the cost of litigation. (*Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at pp. 113-115.) His stake in the litigation was to allow him to refrain from working at the nuclear powerplant while retaining his position in the apprenticeship program. He pursued a lengthy freedom of religion action which imposed a burden on him out of proportion to his employment interests. Without the encouragement of attorney's fees through the private attorney general doctrine, most litigants would not be motivated to incur the expenses of a freedom of religion action for which they will recover no monetary award.

Respondents also argue the award was improper since the attorney's documentation in support of the fees was inadequate. The submitted supplemental records list the services provided by date, type of work provided, and amount of time expended. A declaration submitted by Best's attorney states the records were prepared for the attorney's fees motion, but based on daily time sheets prepared at or near the time the work was performed.

---

[18] Respondents contend the administrative remedy was a precondition to a suit Best had apparently filed for monetary damages. Even assuming Best has a pending suit for damages, he is not assured a favorable outcome, nor do we know if the interests of justice would warrant payment of fees out of a collateral award for damages. We decide the case on the record before us.

██ Respondents challenge the documentation as being noncontemporaneous. A trial court must base its fee award under section 1021.5 on "a careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 48.) The hours must be "carefully documented." (*Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 639, fn. 28.) We find the records here, which detail the hours spent on the case and for what purpose, gave the court an adequate basis upon which to exercise its discretion.

The federal principles governing documentation of attorney's fees were noted in *Webb* v. *Dyer County Bd. of Ed., supra,* 471 U.S. 234, 238, fn. 6 [85 L.Ed.2d 233, 239, 105 S.Ct. 1923, 1926]: "The time schedule submitted by the petitioner was a reconstruction of the hours his counsel spent on the matter. . . . Contemporaneously recorded time sheets are the preferred practice. See *Hensley* v. *Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) (BURGER, C. J., concurring)."

The *Hensley* concurring opinion, cited in *Webb,* states: "I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer *must provide detailed records* of the time and services for which fees are sought. . . . A district judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved *has established by clear and convincing evidence the time and. effort claimed and shown that the time expended was necessary to achieve the results obtained."* (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 440-441 [76 L.Ed.2d 40, 55, 103 S.Ct. 1933], italics added.)

The majority opinion in *Hensley* states: "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." (*Id.* at p. 433 [76 L.Ed.2d at p. 50].)

The majority also noted: "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. . . . [¶] We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. [Fn. omitted.]" (*Id.* at p. 437 [76 L.Ed.2d at p. 53].)

██ Thus, an award under section 1988 does not *require* contemporaneously recorded time sheets, although they are preferred. (See also *Ramos* v. *Lamm* (10th Cir. 1983) 713 F.2d 546, 553, fn. 2, where the court stated in the future lawyers should keep contemporaneous time records to present to

the court upon request, but recognized lawyers in pending cases might have to use reconstructed records.) The determination rests in the lower court's discretion. Here, Best's attorney did not submit contemporaneous records, although he contends they were kept, and thus they should be available for inspection if necessary. On remand, the trial court should exercise its discretion to determine a reasonable fee award under section 1988 based on Best's attorney's documentation and its understanding of the litigation.

■ Respondents claim there is an inconsistency in Best's attorney's documentation which raises questions as to its accuracy. The records refer only to one law firm, whereas Best's attorney was employed by another law firm during a large part of the litigation. Since the records were prepared for the attorney's fees motion and not the actual contemporaneous records, we do not find the failure to distinquish between the two law firms of itself suggests any inaccuracy. Notice of the change of law firms was filed on December 11, 1984, and a matter of public record. It was within the trial court's reasonable exercise of discretion to rely on the records submitted.

■ Finally, respondents claim the records were inadequate because they fail to distinguish between time spent on the issue of freedom of religion and the issue of the safety of nuclear energy, citing *Hensley* v. *Eckerhart, supra,* 461 U.S. 424. *Hensley* v. *Eckerhart, supra,* 461 U.S. at page 440 [76 L.Ed.2d at pp. 54-55] holds that: "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." In *Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d at page 637, we ordered the decision of the administrator reinstated. The administrator had found JATC had unreasonably ignored Best's religious beliefs and legitimate concern for his own safety. (*Id.* at p. 629.) In *Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d at page 634, we noted the evidence did not support a conclusion Best's health was not endangered by an assignment to the nuclear powerplant, but even if the evidence did support such a conclusion, JATC could not discriminate on account of his religious beliefs. In concluding our opinion, we stated because the resolution of the religious freedom issue disposed of the case, we did not address Best's claim of error regarding his personal safety defense. (*Id.* at p. 636, fn. 3.)

Our holding, although expressly premised on the freedom of religion, did not hold Best's personal safety defense was unmeritorious, and indeed sug-

gested the contrary. Best's award should not be reduced based on the time spent on that issue.

Moreover, the safety issue was inextricably related to the religious freedom issue. Best's "studies of the issues of nuclear power led him to reasonably conclude commercial nuclear power threatens the environment and future generations. . . . [and he] . . . holds a sincere religious belief that participating in constructing a commercial nuclear powerplant is an immoral act . . . [since] . . . it would be a sin for a Catholic with Best's knowledge and opinions on the subject of nuclear power to work . . . [at the plant]." (*Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d at p. 629.) Thus, the time spent by Best's attorney on the safety of nuclear energy was essential to his religious freedom claim and should be included in the award.

■■■ JATC meritlessly argues CAC should bear sole responsibility for the fee award, since it sets the standards for apprenticeship to be followed by JATC. (Lab. Code, §§ 3071, 3076.) It was JATC's initial decision to deny Best's request for accommodation of his religious beliefs and to discipline him, and JATC who appealed the administrator's decision in favor of Best to CAC. (*Best* v. *California Apprenticeship Council, supra,* 161 Cal.App.3d at pp. 628-629.) Thus, JATC and CAC are equally responsible for the decision denying religious freedom.

### DISPOSITION

The judgment is affirmed as to the award of attorney's fees for the judicial proceedings. The judgment is reversed as to the denial of attorney's fees for the administrative proceedings, and remanded for a determination of the amount. The trial court should also consider an award of attorney's fees for the appeal. (*Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 637; *Schmid* v. *Lovette, supra,* 154 Cal.App.3d at p. 480.)

Butler, J., concurred.

LEWIS, J.—I respectfully dissent in part. We recently considered the question of whether attorney fees for administrative proceedings could be awarded under Code of Civil Procedure section 1021.5 in *Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 115. Although we based the decision that the developer of Beach Colony II was not entitled to fees on the ground it had not shown its financial burden was out of proportion to its individual stake, we did analyze the developer's contention that Code of Civil Procedure section 1021.5 provided for fees in the administrative proceeding as follows: "Section 1021.5 states an award of attorneys fees

is appropriate if specific criteria is met and one party is successful 'in any action . . . .' Colony II reads section 1021.5 as including administrative proceedings. 'An "action" however, is merely a form of *judicial* remedy sought to protect a right or redress a wrong. [Citations.]' (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 636 . . . (*Serrano IV*), italics added.) The Supreme Court in *Serrano IV* defines judicial remedy as one ' "administered by the courts of justice, or by judicial officers empowered for that purpose . . . .' " (*Id.*, at p. 636, fn. 23.) Thus, the holding of *Serrano IV* is that an administrative agency may not award a successful petitioner attorneys fees under a private attorney general theory for prevailing in *nonjudicial* (i.e., legislative) proceedings.

"In contrast with section 1021.5, section 1028.5's relevant language allows: 'expenses incurred in *administrative* proceedings . . . .' (Italics added.) The absence of any reference to administrative proceedings in section 1021.5 suggests, at least, the section was not meant to apply to nonjudicial aspects of an administrative proceeding. To support its argument, Colony II relies primarily on *New York Gaslight Club, Inc.* v. *Carey* (1980) 447 U.S. 54 . . . . That case is distinguishable because it relies on the language of section 706(k) of the Civil Rights Act of 1964, 78 Statutes 259, 42 United States Code section 2000e-5(k) which more expansively permits fees '[i]n any *action or proceeding* . . . .' (42 U.S.C. § 2000e-5(k) italics added.)" (*Id.* at pp. 115-116, fn. omitted.)

I do not believe anything of significance on the question of whether an administrative proceeding is an "action" has occurred since the filing of that opinion in 1985 and I would follow that analysis.

I would affirm.